ORIGINAL

# In the United States Court of Federal Claims

*Pro Se*
No. 15-1184L
Filed: May 5, 2016

FILED

MAY - 5 2016

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| RICHARD CLARK,<br><br>                    Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Keywords: RCFC 12(b)(1); Motion to
Dismiss; Fifth Amendment Takings
Clause; Caveat.

*Richard Clark*, Seagoville, TX, Plaintiff, *pro se*.

*Daniela A. Arregui Labarca*, Trial Attorney, with whom were, *John C. Cruden*, Assistant
Attorney General, Environmental & Natural Resources Division, United States Department of
Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

The pro se plaintiff in this action, Richard Clark, alleges that the government effected an
uncompensated taking of his private property in violation of the Fifth Amendment when it
recorded a caveat on his residence, which he alleges resulted in the denial of his application for a
home equity loan. The case is before the Court on the government's motion to dismiss for lack of
subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims
(RCFC), and in the alternative, for failure to state a claim upon which relief can be granted under
RCFC 12(b)(6). For the reasons set forth below, the government's motion to dismiss pursuant to
Rule 12(b)(1) is **GRANTED** and the complaint is **DISMISSED** without prejudice.[1]

---

[1] Mr. Clark filed a request to proceed in forma pauperis. To proceed in forma pauperis, a plaintiff
must submit an affidavit that includes a list of all of his assets, a declaration that he is unable to
pay the fees or give the security for an attorney, and a statement of the nature of his action and
his belief that he is entitled to judgment. 28 U.S.C. § 1915(a)(1). Here, Plaintiff satisfied these
requirements, and the Court therefore **GRANTS** his application to proceed in forma pauperis for
the limited purpose of dismissing the complaint.

## BACKGROUND[2]

### I.  Criminal Charges and the Caveat on Mr. Clark's Residence

The claims presented in Mr. Clark's complaint arose out of actions taken during an investigation of Mr. Clark by the Assistant United States Attorney for the Northern District of Oklahoma for his participation in an investment scam known as a "pump and dump" scheme. United States v. Clark, 717 F.3d 790, 796–97 (10th Cir. 2013). Pursuant to that scheme, Mr. Clark and his co-conspirators spread false information about certain stocks in which they had invested to inflate or "pump up" the price and then "dumped" or sold the stocks to unsuspecting buyers at their inflated price to make a profit. Id. Mr. Clark used the laundered profits to, among other things, make improvements on his residence and pay his mortgage. Id. at 804. Mr. Clark was indicted by a grand jury on January 15, 2009 and after a trial in April, 2010, was convicted of fourteen counts of conspiracy, securities fraud, and money laundering. Id. at 798.

On July 10, 2007, during the course of a criminal investigation, an Assistant United States Attorney recorded a caveat against Mr. Clark's home. Id. at 2. A caveat in this context is a "warning or proviso" that serves as notice that the property may be subject to forfeiture. See Black's Law Dictionary (10th ed. 2014); Clark, 717 F.3d at 797. Filed with the Tulsa County Clerk, the notice of the caveat stated that the United States "claim[ed] an interest" in Mr. Clark's home because "the property may be subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981 and/or 982," the civil and criminal forfeiture statutes. Def.'s Mot. to Dismiss (Def.'s Mot.) Ex. 1, ECF No. 5. Mr. Clark was not given formal notice of the caveat when it was registered in the public record. See Clark, 717 F.3d at 798.

Mr. Clark alleges that he became aware of the grand jury investigation in July 2008. Compl. ¶ 11, ECF No. 1. He further claims that he learned of the caveat at that time when he attempted to borrow against his home's equity in order to retain legal counsel. Id. ¶¶ 11–12; Clark, 717 F.3d at 798. According to Mr. Clark, the bank's loan officer informed him that "his loan could not be approved without the removal of the Government's caveat." Compl. ¶ 12.

Sometime thereafter, Mr. Clark's bank requested that the government temporarily release its caveat so that the bank could consolidate five mortgages Mr. Clark had taken out on his residence. See id. Ex. A. On February 26, 2009, the government wrote a letter to the bank agreeing to temporarily release its caveat on Mr. Clark's residence to allow Mr. Clark to consolidate the mortgages on the condition that "no new funds, save and except normal closing costs, are advanced," and with the understanding that the government would record a new caveat "immediately following the recording of the refinance mortgage" with the county clerk. Id. The

---

[2] These facts are based on assertions in Plaintiff's complaint, which the Court accepts as true solely for purposes of ruling on the pending motion to dismiss, as well as jurisdictional facts drawn from the exhibits to the government's motion to dismiss and from the decision by the United States Court of Appeals for the Tenth Circuit affirming Mr. Clark's criminal conviction. See United States v. Clark, 717 F.3d 790 (10th Cir. 2013).

government formally released the caveat on Mr. Clark's property on June 25, 2009. Id. ¶ 36. The bank then renewed Mr. Clark's loans and consolidated his mortgages. Id. ¶ 19.

The government recorded an amended caveat on Mr. Clark's residence on July 28, 2009. See Def.'s Mot. Ex. 4. Thereafter, at an October 1, 2009 hearing in preparation for the criminal trial, Mr. Clark's counsel notified the district court that Mr. Clark intended to seek a home equity loan to pay attorney's fees for his defense. See Def.'s Mot. Ex. 5; Clark, 717 F.3d 789–99 & n.5. Therefore, on the next day, the government again released the caveat on his residence. Def.'s Mot. Ex. 5; Clark, 717 F.3d at 799 n.5. Nonetheless, when Mr. Clark applied for a loan, the bank denied his application. Compl. ¶ 23. In his complaint in this case, Mr. Clark alleges that the bank denied his loan request because "the Government had directly warned the bank . . . not to loan [him] any money on his property." Id. (citing the February 26, 2009 letter referenced above from the government to Mr. Clark's bank). In his criminal case, however, Mr. Clark asserted that when the government lifted the caveat he had no income "because of the government's other post-indictment restrictions on his business activities." Clark, 717 F.3d at 799 & n.5. Further, the court of appeals found that the government's assertion that the caveat was lifted unconditionally on October 2, 2009 was "supported by the record." Id.

## II.    Mr. Clark's Conviction and Appeal

As mentioned, following a three week trial in April 2010, Mr. Clark was convicted of multiple counts of conspiracy, wire fraud, securities fraud, and money laundering. He was sentenced to 151 months in prison, and found jointly and severally liable with his co-conspirator for monetary damages for criminal penalties and restitution to individual victims. See id. at 798.

Mr. Clark appealed his conviction to the United States Court of Appeals for the Tenth Circuit. His primary claim, among many, was that the evidence presented by the government was insufficient to support his conviction. See id. at 804–09.  In addition,  Mr. Clark argued that his residence was not forfeitable property under 18 U.S.C. §§ 981 and/or 982, and that his rights to due process under the Fifth Amendment were violated because he was not afforded a hearing on the validity of the caveat after it was imposed and before his trial. Id. at 799. He also alleged that the caveat prevented him from retaining the counsel of his choice, in violation of the Sixth Amendment. Id. at 803.

On January 21, 2013, the court of appeals issued its decision affirming Mr. Clark's conviction. The court reviewed the evidence de novo. It found that for each of the charges of which Mr. Clark was convicted a rational trier of fact could have found Mr. Clark guilty of the crimes beyond a reasonable doubt. As a result, the court rejected Mr. Clark's claim that the evidence was insufficient to support his conviction. Id. at 804–09.

The court of appeals also rejected Mr. Clark's claim that his Fifth Amendment rights were violated because he was not provided with a pretrial hearing on the validity of the caveat. The court assumed, without deciding, that the caveat constituted a pretrial restraint of assets sufficient to trigger Mr. Clark's procedural due process rights. Id. at 800 (citing the Tenth

Circuit's prior decision in <u>United States v. Jones</u>, 160 F.3d 641 (10th Cir. 1998)).[3] It found, however, that Mr. Clark had waived his rights to a hearing by failing to ask the district court for one when he learned of the caveat in July 2008. <u>Id.</u> at 802–03. Accordingly, the appellate court rejected Mr. Clark's due process claim. <u>Id.</u>

Finally, the Court concluded that the placement of the caveat did not impermissibly infringe on Mr. Clark's Sixth Amendment right to counsel. <u>Id.</u> at 804. As with his due process claims, the court found that Mr. Clark failed to properly raise his Sixth Amendment claims in the district court. Moreover, the court of appeals found it "significant" that the district court had ruled "$225,241.81 of equity in Mr. Clark's home—the property subject to the government's caveat—to be forfeitable property" because the money used to remodel the home and to pay the mortgage was directly traceable to the conspiracy of which he was convicted. <u>Id.</u> The court of appeals noted that the Sixth Amendment does not require that the government allow forfeitable property to be used to pay a defendant's legal fees. <u>Id.</u> For that reason, among others, the court dismissed Mr. Clark's Sixth Amendment claims. <u>Id.</u>

## III.    This Action

Mr. Clark filed this action on October 13, 2015. <u>See</u> Compl., ECF No. 1. He alleges that the government effected a taking of his private property without just compensation in violation of the Fifth Amendment when it recorded a caveat on his residence. <u>Id.</u> ¶¶ 40, 46. Mr. Clark further alleges that "a government coercion transpired when the bank was directly prohibited from loaning plaintiff any money on his equity interest in the property." <u>Id.</u> ¶ 60 (citing the February 2009 letter from government to bank (Compl. Ex. A)). He requests monetary damages of at least $750,000. <u>Id.</u> ¶ 69.

On December 14, 2015, the government filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or in the alternative, motion to dismiss for failure to state a claim under Rule 12(b)(6). ECF No. 5. Mr. Clark filed his response on January 21, 2016. ECF No. 7. For the reasons set forth below, the government's motion is **GRANTED** and the complaint is **DISMISSED** without prejudice.

---

[3] In <u>United States v. Jones</u>, the district court had granted an ex parte motion by the government to freeze some of the defendant's assets pending trial. 160 F.3d at 644. The court of appeals held in that case that "the proper balance of private and government interests [under the due process clause] requires a post-restraint, pre-trial hearing but only upon a properly supported motion by a defendant." <u>Id.</u> at 647.

## DISCUSSION

### I. Motion to Dismiss under RCFC 12(b)(1)

#### A. Standard for Motion to Dismiss for Lack of Jurisdiction

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). It may therefore consider matters outside of the pleadings in ruling on a motion to dismiss pursuant to RCFC 12(b)(1). See Reynolds v. Army and Airforce Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (finding that to determine jurisdiction the "court may consider relevant evidence in order to resolve the factual dispute").

It is well established that complaints that are filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the court that jurisdictional requirements have been met. Bernard v. United States, 59 Fed. Cl. 497, 499 (2004), aff'd, 98 Fed. App'x 860 (Fed. Cir. 2004).

#### B. Jurisdiction Over Plaintiff's Claims

##### 1. Tucker Act

Under the Tucker Act, this Court is granted jurisdiction to "render judgment upon any claim against the United States founded . . . upon the Constitution . . . for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages. United States v. Mitchell, 463 U.S. 206, 212 (1983). However, the Tucker Act does not confer any substantive rights on a plaintiff. United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). In that regard, "[i]t is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction." Id. at 1309; see also Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005) (holding that the Court of Federal Claims has jurisdiction under the Tucker Act "to the extent the [plaintiff has alleged] a nonfrivolous takings claim founded upon the Fifth Amendment").

In this case, as noted, Mr. Clark has alleged that the government effected a taking of his property (i.e., his residence) when it recorded a caveat on his home with the Tulsa County Clerk, advising that the United States claimed an interest in the home "for the reason that the property may be subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981 and/or 982." He also alleges that the government's conduct in connection with the recording of the caveat was "coercive" in nature, and that its coercive conduct also effected a taking of his property without just compensation.

The government argues with some force that neither a forfeiture, much less a caveat that is recorded in anticipation of a potential forfeiture, is a "taking" under the Fifth Amendment. Def.'s Mot. at 15–18; see also Bennis v. Michigan, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); AmeriSource Corp. v. United States, 525 F.3d 1149, 1153 (Fed. Cir. 2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause."); Crocker v. United States, 37 Fed. Cl. 191, 194 (1997), aff'd 125 F.3d 1475 (Fed. Cir. 1997) (forfeiture pursuant to federal drug laws is not a taking). Those arguments, however, go to the question of whether Mr. Clark has stated a claim for relief under RCFC 12(b)(6). Because the Court cannot say that Mr. Clark's claims are "so insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy," the legal claims he has articulated fall within this Court's Tucker Act jurisdiction. Moden, 404 F.3d at 1340 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998)); see also Gould, Inc. v. United States, 67 F.3d 925, 929 (Fed. Cir. 1995) (observing that "[a] dismissal for lack of jurisdiction means that the subject-matter of the dispute is one that the court is not empowered to hear and decide" while "[a] dismissal for failure to state a claim . . . is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief").

On the other hand, Mr. Clark's complaint also appears to challenge the underlying legality of the government's recording of the caveat in a number of respects. He alleges that the government lacked a legal basis for the caveat at the time it was imposed, Compl. ¶ 51, that the caveat was "improperly utilized" because the property was not connected to criminal activity at the time the caveat was imposed, id. ¶ 52, that the indictment did not include forfeiture allegations to support the placement of the caveat, id. ¶ 53, that the grand jury did not find probable cause "to support the caveat's existence," id. ¶¶ 54–55, and that the government had other tools available to ensure the property's availability in case of forfeiture but "for reasons unknown" chose the caveat, id. ¶¶ 55–57. But see Pl.'s Resp. to Def.'s Mot. to Dismiss (Pl.'s Resp.) at 3 (arguing, in apparent contradiction to the assertions in his complaint, that the "caveat was a lawful mechanism . . . and not even a seizure"), ECF No. 7.

This Court, of course, lacks jurisdiction to consider these challenges to the validity of the criminal forfeiture procedures. Vereda, Ltda. v. United States, 271 F.3d 1367, 1374–75 (Fed. Cir. 2001) (stating that the Court of Federal Claims does not have jurisdiction over a plaintiff's takings claim requiring a determination of the correctness of the administrative forfeiture); Crocker v. United States, 125 F.3d 1475, 1477 (Fed. Cir. 1997) (noting that the Court of Federal Claims does not have jurisdiction to review procedural validity of a forfeiture of seized property or money under the Controlled Substances Act); Maracalin v. United States, 52 Fed. Cl. 736, 743 (2002) (Court of Federal Claims lacks jurisdiction over actions challenging the validity of criminal forfeitures). Therefore, for purposes of deciding Mr. Clark's takings claims, the Court assumes that the government acted within its lawful authority with respect to all of the actions it took in this case in connection with the forfeiture proceedings, including the recording of the caveat and amended caveat with the County Clerk. See Rith Energy, Inc. v. United States, 270 F.3d 1347, 1352–53 (Fed. Cir. 2001) (denying petition for rehearing).

## 2. Statute of Limitations

As noted above, this Court has jurisdiction over takings claims such as Mr. Clark's under the Tucker Act (regardless of whether those allegations could survive a motion to dismiss under RCFC 12(b)(6)). Takings claims, however, are subject to the six-year statute of limitations set forth in 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The six year statute of limitations is not subject to equitable tolling and is jurisdictional in nature. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 134 (2008).

A cause of action under the Tucker Act first accrues when "all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for [] money.'" Martinez v. United States, 333. F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234 (1996)); see also Shoshone Indian Tribe of Wind River Reservation v. United States, 672 F.3d 1021, 1030 (Fed. Cir. 2012) (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (claim accrues on day that "plaintiff was or should have been aware" of the events "which fix the government's alleged liability")). A takings claim under the Fifth Amendment thus accrues "'when [the] taking action occurs.'" Navajo Nation v. United States, 631 F.3d 1268, 1273–74 (Fed. Cir. 2011) (brackets in original) (quoting Goodrich v. United States, 434 F.3d 1329, 1333 (Fed. Cir. 2006)); see also Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1359 (Fed. Cir. 2013) (citing Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir. 2009) ("[A] claim alleging a Fifth Amendment taking accrues when the act that constitutes the taking occurs.")).

In this case, the gravamen of Mr. Clark's complaint is that the government effected a "taking" of his property when it recorded a caveat on his home which warned that it might be subject to forfeiture under 18 U.S.C. §§ 981 and 982. By his own admission, however, Mr. Clark became aware of the recording of the caveat at least as early as July of 2008, when the bank notified him of its existence as an explanation for its denial of his application for an equity loan on his residence. See Compl. ¶¶ 11–12; Clark, 717 F.3d at 798.[4] This is longer than six years before Mr. Clark filed his complaint in this matter, on October 13, 2015.[5]

---

[4] Because Mr. Clark had actual notice of the caveat more than six years before he filed his complaint in this Court, it is unnecessary to address the government's argument that, under Oklahoma law, Mr. Clark was under constructive notice when the government publically recorded the caveat on July 10, 2007—more than eight years before Mr. Clark filed his complaint. See Def.'s Mot. at 11 (citing Okla. Stat. Ann. tit. 25, § 13 "a person who has actual notice of the circumstances sufficient to put a prudent [person] upon inquiry as to a particular fact, and who omit to make such an inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.")

[5] The complaint was filed with the Clerk of the Court on October 13, 2015, but is dated October 1, 2015. Many courts have adopted what is known as the "prisoner mailbox rule" in determining filing dates for actions brought by plaintiffs who are incarcerated. See Sharpe v. United States,

Notwithstanding the foregoing, Mr. Clark argues in his opposition to the government's motion to dismiss that the date that the caveat was first recorded is not the date his cause of action accrued. He states that his takings claim falls within the six year statute of limitations because it was not until October 12, 2009, that "all [the] events ha[d] occurred to fix the Government's alleged liability." Id. (citing Martinez, 333 F.3d at 1303). He contends that the placement of the caveat in 2007 was merely a first step in a "chain of events" that "subsequently followed that are relevant to the accrual date equation." Id. Thus, he appears to argue that it was not until October 12, 2009 (or perhaps even 2014, when he alleges he first became aware of the February 2009 letter) that he fully appreciated the coercive effects that the government's recording of the caveat had on his bank's willingness to extend a home equity line of credit to him.

Mr. Clark's arguments lack merit. Even assuming that he did not fully appreciate the effect that the caveat would have on his ability to secure a home equity loan until October 12, 2009 (or later), the critical point is that it is the caveat that constitutes the alleged "taking." Therefore, the recording of the caveat fixed whatever liability the government might have under the takings clause to compensate him and gave him the right to sue. By contrast, the allegedly "coercive effect" that the caveat and amended caveat had on his bank in October 2009 is a manifestation of the injury Mr. Clark claims that he suffered as a result of that earlier "taking." Thus, the government's liability would have been fixed (and the limitations period initiated) as of the date the caveat was filed, even if the extent of the injury Mr. Clark alleges he suffered as a result of this "taking" was not yet known.

Moreover—even if the government's alleged "coercion" of Mr. Clark's bank were somehow considered to itself be a "taking" of Mr. Clark's property—that claim would still be barred by the statute of limitations. Thus, by Mr. Clark's own admission, he became aware of the allegedly "coercive" effect of the caveat on his bank at least as early as July of 2008, when, as noted, the bank alerted him to the caveat's existence as an explanation for its denial of his application for an equity loan on his residence. See Compl. ¶¶ 11–12; Clark, 717 F.3d at 798.

There is similarly no merit to Mr. Clark's attempt to avoid the bar of the statute of limitations based on the government's alleged "fraudulent concealment" of the February 26, 2009 letter to his bank, discussed above. Mr. Clark characterized the letter in his complaint as a "direc[t] warn[ing to] the bank . . . not to loan [him] any money on his property." Compl. ¶ 23. Mr. Clark argues that the letter supplies confirming evidence that "makes it crystal-clear about the Defendant's coercion over the bank and explains the true reason why the bank would not loan Plaintiff any money on his equity so he could hire the Securities attorney, even after the caveat was removed on October 2, 2009!" Pl.'s Resp. at 6. According to Mr. Clark, "it would be

_____

111 Fed. Cl. 334, 336 (2013) and cases cited therein. Under that rule, a submission by an incarcerated prisoner may be deemed filed with the court when it has passed into the control of prison officials. Id.; see also Bernaugh v. United States, 168 F.3d 1319, *1 (Fed. Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)) (endorsing prisoner mailbox rule) (unpublished table decision). The Court does not decide here whether the prisoner mailbox rule applies because, for the reasons set forth herein, Mr. Clark's claims are time-barred regardless of whether an October 1st or October 13th filing date is used.

very safe to say that the Defendant ostensibly concealed this letter (from Plaintiff) and its coercion over the bank." Id.

Mr. Clark's characterization of the February 26, 2009 letter as an instrument of coercion whose effects continued to be felt even after the caveat was unconditionally lifted at his attorney's request, is highly implausible, given the letter's language and purpose.[6] In fact, as noted above, Mr. Clark contended before the Tenth Circuit that the loan had been denied because of his financial distress, not the already released caveat. But even assuming that Mr. Clark's characterization of the letter were reasonable, the government's failure to provide him with a copy of the letter does not toll the statute of limitations.

To be sure, it is well established that even in cases against the United States, "the statute of limitations can be tolled where the government fraudulently or deliberately conceals material facts relevant to a plaintiff's claim so that the plaintiff was unaware of their existence and could not have discovered the basis of his claim." Hopland Band of Pomo Indians, 855 F.2d at 1577. But in this case, for the reasons set forth above, Mr. Clark had sufficient facts upon which to base his takings claim without regard to the contents of the February 26, 2009 letter. As explained, he knew as early as February 2008 both that the caveat had been recorded and that the bank was unwilling to extend him a home equity loan because of the caveat.

Further, and in any event, to establish "fraudulent concealment," a plaintiff must show that the government had some affirmative statutory or regulatory obligation to disclose the information it is accused of fraudulently concealing. Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1143 (Fed. Cir. 1996). In this case, the Court is unaware of any affirmative obligation on the government's part to disclose the letter at issue to Mr. Clark, whether statutory, regulatory, or otherwise. Therefore, Mr. Clark's fraudulent concealment argument must be rejected.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the government's motion to dismiss, and **DISMISSES** Plaintiff's complaint for lack of jurisdiction, without prejudice. The Clerk is directed to enter judgment accordingly.

Mr. Clark has also filed a "Motion for Leave to Conduct Discovery." ECF No. 12. The discovery sought by Mr. Clark does not relate to the threshold jurisdictional issue; therefore, Mr. Clark's motion to conduct discovery is **DENIED**.

---

[6] In the February 26, 2009 letter, the government agreed to release the then-existing caveat to allow Mr. Clark to consolidate his mortgages. The government noted in that letter that it would republish an amended caveat after the new mortgage was recorded with the County Clerk. See Def.'s Mot. Ex. 5. There is no indication in the record, however, that the government placed similar conditions on its release of the amended caveat, and the Tenth Circuit found that the record in the case before it supported the government's argument that the amended caveat's release was unconditional. Clark, 717 F.3d at 799 n5.

Mr. Clark has also filed a Motion for Leave to Supplement the Pleadings. ECF No. 15. That motion seeks leave to supplement his complaint to add a citation to <u>Luis v. United States</u>, 136 S. Ct. 1083 (2016). First, it is not necessary to supplement the complaint to bring new authority to the Court's attention. Further, given the Court's lack of jurisdiction over the complaint, the supplement Mr. Clark proposes would be futile. Mr. Clark's motion to supplement the pleadings is, accordingly, **DENIED**.

**IT IS SO ORDERED.**

_____
ELAINE D. KAPLAN
Judge